Sewall, J.,
delivered the opinion of the Court.
The plaintiff moves for a new trial, in this case, because the verdict upon the issue to the country, whether an escape or not, amounting to a forfeiture of the bond declared on, was found *374 against him, contrary to the evidence and the law; [ * 375 ] * and because the jury, in rendering it, proceeded against the opinion and direction of the Court in a matter of law.
If, upon the facts stated, the law was with the plaintiff, as the judge who presided at the trial directed the jury that it was, a new trial must be granted.
From a recurrence to a report of the evidence in a former trial of the same issue between these parties, to which the present report refers, and taking into view the additional facts from the ancient records of the Court of Sessions, it appears that Nutting, the prisoner for whom the bond was given by the defendant as a surety, to entitle him to the liberty of the yard, occupied, in the night-time, a room in the upper story of the building in this town which is, some apartments of it at least, the county jail, and in which there are some apartments in the actual occupation of the jailer and his family.
Nutting’s chamber, in the upper story, was at the time, either by usage or by a regular order of the Court of Sessions, an apartment appropriated to the use of prisoners for debt; and it is admitted that his passing the night there was no escape. But it also appears that, in the evening, during that part of the twenty-four hours when there is no peculiar indulgence to prisoners for debt in consequence of their bonds for the liberty of the yard, Nutting was frequently in the apartments on the lower floor of the house, where the jail-keeper and his family have their habitation.
The direction to the jury, now insisted on for the plaintiff, that Nutting committed an escape in being with the jail-keeper’s family in the lower part of the house, and in passing his evenings with them, was expressed by the late chief justice at the former trial; and because they were then disregarded by the jury in their verdict, a new trial was ordered upon the motion of the plaintiff. So far, then, as the decision depends upon the facts proved at the former trial, we must consider the law as settled by the decision of this Court.
It is now argued, for the defendant, that the additional evidence produced at the last trial so far changed the state of [*376 ] * the case as to justify the verdict of the jury; particularly the minutes read from the ancient records of the Court of Sessions, and the proof that it had been usual, for many years past, for prisoners confined for debt to be indulged with the use of the kitchen in winter; which establish as a fact, it is said, that the rooms occupied by the jailer and his family are not appropriated to them, but are a part of the jail, and among the rooms which may be appropriated to the use of prisoners confined for del.t.
*375 As to the usage relied on in the case, the evidence, as the report states the result of it, did not prove any known or acknowledged right, but only a permission or indulgence by the jailer, which certainly is not to operate against the principles of law. Prisoners for debt, until the recent statute upon this subject, were all upon the same footing, as to the nature and manner of their confinement, excepting the indulgence granted to such prisoners as had given bonds for the liberty of the yard. But this indulgence was restricted to the daytime by the statute provisions under which this bond was taken and is to be enforced.
Any partial indulgence, depending upon the favor of the jail-keeper, was an abuse of his authority; and, however long it had been continued, we can conclude nothing from it, as to the state of this building, what apartments were the jail, and what the habitation of the jailer. It may be that no distinct appropriation was ever made ; and that the jailer and his family have been obliged or permitted to receive prisoners for debt, as inmates entitled to be occasionally in apartments occupied for the kitchen and parlor of the jailer and his family. The minutes of the orders of the Court of Sessions, in respect to the building, the enlarging and repairs of this ancient structure, give some countenance to the fact supposed in the argument for the defendant — that the whole building is the jail, and that the apartments are, one as well as another, to be distributed and appropriated at the will of the jailer. But the minutes are obscure, and need some elucidation from other evidence ; and we cannot conclude from them, or upon the evidence reported, that all the apartments of the house are, in effect, the jail.
* The attention of the jury seems not to have been [ * 377 ] directed to this inquiry; and their verdict was probably dictated by what they may have thought the hardship of the case, or by the supposed right of the prisoner, under the usual indulgence of the jailer. If he was authorized to admit prisoners for debt as, inmates of the apartments occupied also for his family, —and he was, if there had been no distinct appropriation of apartments to the uses of a jail, — the case is with the defendant upon the additional evidence.
But this is not established by the evidence as reported; and without some evidence to that effect, or until the jury have determined the fact upon such evidence as they may have respecting it, and upon legal principles, the direction given at the last trial must be considered as correct; and the verdict ought to have been for the plaintiff.
The verdict is set aside, and a new trial is granted. (1)

 See' Partridge vs. Emerson, 9 Mass. Rep. 123, and the cases cited in note (a)